# EXHIBIT A

L8G5scuA

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                          21 Cr. 489 (JPC)

 5   RALPH SCURLOCK,

 6                 Defendant.

 7   ------------------------------x

 8                                          August 16, 2021
                                            3:05 p.m.
 9

10   Before:

11                      HON. JOHN P. CRONAN,

12                                          U.S. District Judge

13

14                          APPEARANCES

15   AUDREY STRAUSS
          United States Attorney for the
16        Southern District of New York
     BY:  JANE CHONG
17        Assistant United States Attorney

18   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
19   BY:  SYLVIE J. LEVINE

20   ALSO PRESENT:  FRANCESCA PIPERATO, Pretrial Services

21

22

23

24

25
```

L8G5scuA

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, starting with the

3     government, please state your name for the record.

4          MS. CHONG:  Good afternoon, your Honor.  Jane Chong

5     for the government.

6          THE COURT:  Good afternoon, Ms. Chong.

7          MS. LEVINE:  Good afternoon.  Federal Defenders of New

8     York by Sylvie Levine on behalf of Mr. Scurlock.

9          THE COURT:  Good afternoon, Ms. Levine.

10          And I believe pretrial services is also present?

11          OFFICER PIPERATO:  Good afternoon, your Honor.

12     Francesca Piperato with Pretrial Services.

13          THE COURT:  I apologize.  With the mask it is

14     sometimes hard.  Officer, your last name?

15          OFFICER PIPERATO:  Piperato.

16          THE COURT:  Good afternoon, everyone.  Good afternoon,

17     Mr. Scurlock.

18          We are here for Mr. Scurlock's arraignment and his

19     initial pretrial conference.  I also understand, Ms. Levine,

20     you will be making a bail application?

21          MS. LEVINE:  Yes, please, your Honor.

22          THE COURT:  I will address that application toward the

23     end of the proceeding.

24          Before we turn to the defendant's arraignment, I think

25     it would make sense for me to initially put on the record, as I

L8G5scuA

1     believe I have in part before with Ms. Levine, my prior work

2     before taking the bench, before I became a federal judge about

3     a year ago I worked at the Department of Justice.  I was a

4     prosecutor at the U.S. Attorney's office for the Southern

5     District of New York, which is Ms. Chong's office, until August

6     2017, and then I worked at the Department of Justice's criminal

7     division in Washington, D.C. until early August 2020 when I was

8     confirmed in my current job.

9            The complaint and the indictment were of course filed

10    after I left the Department of Justice but the charge alleges

11    the illegal possession of a firearm on July 4, 2019, at which

12    point I was still with the Criminal Division.  With that said,

13    I have reviewed the complaint and indictment and I am aware of

14    no involvement that I had in this, in any investigation related

15    to this case while I was at the Department of Justice such as

16    my authorizing any investigative techniques or consulting or

17    approving any charging decision.

18           Ms. Chong, is that your understanding as well?

19           MS. CHONG:  Yes, your Honor.

20           THE COURT:  And there are no Title III wires in this

21    case, I take it?

22           MS. CHONG:  No, your Honor.

23           THE COURT:  Ms. Levine, I also note that Ms. Chong was

24    a summer intern of mine at the U.S. Attorney's office some time

25    ago.  Your memory is probably better than mine, Ms. Chong, I

L8G5scuA

1    believe about eight or nine years ago.  She was an excellent

2    intern, we stayed in contact over the years.  I think I may

3    have served as a reference at some point but I have no

4    information or knowledge about this case aside from what I have

5    read in the complaint and the indictment and, Ms. Levine, I

6    don't believe we had any cases when I was at the U.S.

7    Attorney's office.  I'm not a hundred percent sure about that.

8            MS. LEVINE:  I don't think we did, your Honor.

9            THE COURT:  I don't see any reason why I should not

10   preside over this case but if any party thinks otherwise, I ask

11   that you make an application or motion within two weeks so we

12   assure to keep this case moving on track for a timely

13   resolution.

14           So, let me just start with you, Ms. Chong.  Can you

15   tell me a little bit more about when and where the defendant

16   came into federal custody?

17           MS. CHONG:  Yes, your Honor.  The defendant, he was

18   initially charged in May, he was arrested in the district of

19   Maine on July 22nd, around 2:30 p.m., and he arrived in the

20   Southern District of New York after being transferred by the

21   U.S. Marshals on August 11th at approximately 5:00 p.m.

22           THE COURT:  And, in terms of Mr. Scurlock's arrest in

23   Maine, was he at liberty or at transfer from state custody.

24           MS. CHONG:  He was at liberty when he was arrested and

25   he was detained in the District of Maine.

L8G5scuA

1          THE COURT:  And, Ms. Levine, I understand that when

2     Mr. Scurlock arrived in this district he was detained on this

3     without prejudice to an application?

4          MS. LEVINE:  Yes, your Honor; on Thursday.

5          THE COURT:  So, let's turn to Mr. Scurlock's

6     arraignment.

7          Mr. Scurlock, have you received a copy of the

8     indictment in this case?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And Ms. Levine, have you been able to

11     review that indictment with your client?

12          MS. LEVINE:  I have, your Honor.

13          THE COURT:  Mr. Scurlock, you are charged in the

14     indictment in one count.  That count charges that, on July 4,

15     2019, knowing that you previously had been convicted of a

16     felony, you knowingly possessed a firearm that was in and

17     affecting commerce and, in particular, the firearm was a .25

18     caliber semi-automatic Phoenix Arms pistol.  The indictment

19     also contains a forfeiture allegation.

20          Do you wish me to read it to you or do you waive its

21     public reading?

22          THE DEFENDANT:  I waive.

23          THE COURT:  You waive you said?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And have you been able to discuss the

L8G5scuA

1  indictment with Ms. Levine?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Ms. Levine, do you wish to enter a plea on

4  behalf of your client?

5          MS. LEVINE:  At this time we plead not guilty.

6          THE COURT:  And I will enter that not guilty plea for

7  Mr. Scurlock.

8          Let me go back to the government.  Ms. Chong, can you

9  give me an overview of -- I think from the complaint I have a

10  good sense of the alleged conduct but the government's proof in

11  this matter would be discovery that you expect to be produced

12  and the timeline for production of that discovery?

13          MS. CHONG:  Yes, your Honor.

14          As to the evidence in this case, your Honor, the

15  government can proffer that it has the following:  Surveillance

16  footage and cell phone footage which shows an individual

17  shooting the victim on a public street and then engaging in a

18  physical fight.  There was also a phone that appears to have

19  been recovered from the scene by a witness on the scene.  On

20  that phone are photographs of the defendant wearing clothing

21  that appears to match the clothing of the shooter.  Also on the

22  phone are photos that match the firearm in this case, the black

23  Phoenix Arms pistol.  The government also has the firearm

24  itself recovered from the garbage nearby and a LAN report of

25  the firearm showing a DNA match for the defendant.

L8G5scuA

1          As to discovery in this case, your Honor, it will

2     consist primarily of the items I described.  The government

3     also, as to timeline, requests two weeks for rolling discovery.

4          THE COURT:  Ms. Levine, does that timeline work on

5     your end?

6          MS. LEVINE:  Yes, your Honor.  That's fine.

7          THE COURT:  On the topic of the government's

8     disclosure obligations, and Judge Moses may have covered this

9     at the presentment, from reviewing the docket I think it is

10     important for me to address it as well.  I note that in late

11     October the former president signed into law the Due Process

12     Protections Act.  That statute has provisions that amend Rule 5

13     of the Federal Rules of Criminal Procedure such that Rule 5(f)

14     requires me to remind the parties of the prosecutor's

15     obligations under Supreme Court's decision in *Brady v.*

16     *Maryland*.  Pursuant to that statute and Rule 5(f), I direct the

17     prosecution to comply with its obligation under *Brady v.*

18     *Maryland* and that case's progeny, to disclose to the defense

19     all information, whether admissible or not, that is favorable

20     to the defendant, material to either guilt or to punishment,

21     and known to the prosecution.  Possible consequences for

22     non-compliance may include dismissal of individual charges or

23     the entire case, exclusion of evidence, professional

24     discipline, court sanctions for the attorney or the attorneys

25     responsible.  After this proceeding I will enter, on the

L8G5scuA

1    docket, a written order more fully describing that obligation

2    and the possible consequences of failing to meet it.

3            Ms.Chong, I direct the prosecution to review and

4    comply with that order, but for now, does the prosecution

5    confirm that it understands its obligations and that it will

6    fulfill them?

7            MS. CHONG:  Yes, your Honor.

8            THE COURT:  Ms. Levine, based on the government's

9    description of the discovery, how much time do you think you

10   will need to review discovery with a view on any motions you

11   may wish to file?

12           MS. LEVINE:  I think approximately 30 days.  If

13   Mr. Scurlock remains in custody that will be harder

14   logistically, but I would aim for 30 days and if I needed more

15   time I can always apply to the Court.

16           THE COURT:  We will address the bail argument in a

17   moment.  Assuming for now that Mr. Scurlock remains remanded,

18   we will remain in a position where I can't set a firm date and

19   time right now but we will -- do you think the week of

20   September 13th would be enough time or would you rather have

21   the following week?

22           MS. LEVINE:  That week is fine.

23           THE COURT:  So, we will plan on a status conference

24   the week of September 13th.  At that conference, Ms. Levine, I

25   will ask about the status of your review of discovery with your

L8G5scuA

1    client and whether you anticipate filing any motions, and I

2    will be reasonable on that date if there are challenges in

3    reviewing discovery in determining whether motions should be

4    filed.  Depending on where we are that week I may set a trial

5    date.  We should have still plenty of time to request a trial

6    date in early 2022 if that's what we are looking at.  Of

7    course, if a disposition is reached before that, you should

8    reach out to Ms. Henrich and we will scheduling any pleading.

9            Mr. Scurlock, I also want to note one thing.  I advise

10   all criminal defendants at their first appearance before me, it

11   is nothing specific to you, nothing specific to Ms. Levine,

12   that if for whatever reason circumstances arise that you want

13   to change counsel or you need to change counsel, maybe you

14   might retain counsel or just wanted to appoint new counsel, it

15   is very important that you raise that as soon as possible.  A

16   lawyer needs enough time to prepare a case, to review

17   discovery, and maybe as early as the next conference I'm going

18   to set a trial date, and when I do so that date is unlikely to

19   change absent very compelling reasons.  You are very fortunate

20   to have an excellent, experienced attorney in Ms. Levine, but I

21   tell you if you want to change counsel, it is in your interest

22   to raise that as early as possible.

23           Before we turn to the issue of bail, is there an

24   application from the government?

25           MS. CHONG:  Yes, your Honor.  The government seeks

L8G5scuA

1    detention on the basis of flight risk and danger to community.

2            THE COURT:  Ms. Levine, do you wish to make a bail

3    argument?

4            MS. LEVINE:  Yes, please.

5            THE COURT:  Go ahead.

6            MS. LEVINE:  So, your Honor, we are proposing a robust

7    bail package and together it is a combination of conditions

8    that is sufficient under the Bail Reform Act to ensure the

9    safety of the community and Mr. Scurlock's return to Court.

10           First I would ask your Honor to look for a moment or

11   to consider the timeline of this case.  The allegations in this

12   case stem from an incident on July the 4th of 2019 and the

13   criminal complaint was not sworn out until May of 2021.  That's

14   almost two years in which neither the feds in the Southern

15   District of New York nor the state, nor did any New York State

16   district attorney's office charge Mr. Scurlock.  Your Honor

17   knows from your experience that when cases are being

18   investigated by the NYPD there are task forces, there are joint

19   federal and state investigators, particularly with regard to

20   gun crimes, and if either prosecuting body, either the state or

21   the feds, had sufficient information even to make out probable

22   cause, we would have seen Mr. Scurlock here a long time ago

23   and, for better or worse, that two-year gap tells me, with the

24   limited information I of course have at this early stage, that

25   the evidence cannot possibly be as clear cut or as simple as

L8G5scuA

1    the government will probably pitch it to you as.

2              In a case with videos and witnesses that are described

3    in the criminal complaint, if those people could readily -- if

4    those items readily identify Mr. Scurlock, like I said, it

5    belies the two-year delay.

6              And then of course I think most telling for me in

7    reading the criminal complaint is that language about a DNA

8    match.  And while, of course, if in fact that turns out to be

9    true, that's good evidence for the government but I am really

10   wary of the word "match."  We know scientifically that the

11   OCME, that's not generally the language that the Office of the

12   Chief Medical Examiner uses in this district and it will

13   certainly be an important part of our review process to

14   determine what exactly they mean and that, of course, is a

15   question of fact.  Where on the gun was the DNA?  I think it's

16   clear from even the face of the complaint that perhaps both the

17   victim and the shooter, and perhaps others, touched the weapon.

18   And, of course, as a matter of science, which is what does

19   "match" mean.  I think there is not a criminalist in this

20   district that I have ever come across that uses the word

21   "match" and I was, frankly, surprised to see it written in a

22   sworn criminal complaint and I think it begs the question or it

23   begs additional evidence as to what the quality of that

24   evidence is.

25              Look.  These are big, open questions that the

L8G5scuA

1    discovery will shed a lot of light on and of course the

2    government has seen it and I have not, but as the Court well

3    knows, that's not the question today.  We are not here to do

4    the trial, we are not here on a motion, we are here to

5    determine are there conditions that can be fashioned, and under

6    3142 of course that combination requires, one, the presumption

7    of innocence; and two, the presumption of release.  This is a

8    case where release is presumed unless the government can meet

9    their burden otherwise.  And so, I'm proposing a package for a

10   person who is a United States citizen, who has never had a U.S.

11   passport, who in the two years since this case allegedly took

12   place, didn't flee the country, he was arrested in this country

13   having never possessed a passport, and for a person whose last

14   criminal conviction is a decade old.  His last criminal

15   conviction, according to the Pretrial Services report, was from

16   2011 and before, and those convictions are so old that

17   Mr. Scurlock is not currently on probation or parole and he was

18   not on probation or parole at the time that this offense is

19   alleged to have occurred.  And, of course, the age of those

20   convictions will make a big difference in his guidelines

21   calculation in a case where despite, of course, the severity of

22   the charges which I am not disputing, it is also undisputed or

23   indisputable that this case comes with no mandatory minimum

24   whatsoever.

25          So, the conditions I propose are as follows:  We

L8G5scuA

propose a $50,000 personal recognizance bond co-signed by three

financially responsible persons.  Since Thursday my office has

been working quickly to get in touch with Mr. Scurlock's family

and put together this package and we have three people that we

think are viable co-signers.  And that kind of family support

is exactly the kind of condition that judges in this district

use to determine, can I put together a bail package?  And three

co-signers is exactly that.

          And, on top of that, we are suggesting that the Court

impose a condition of home detention with electronic

monitoring.  That would mean that Mr. Scurlock is released with

an ankle bracelet that will keep him at home unless and until

pretrial services were to authorize him to leave and even if

they were to do so, it would be for the kind of activities that

the Court endorses -- meetings with his lawyer, meetings with

Pretrial Services, the doctor, or employment should he obtain.

          Those conditions, your Honor, coupled with pretrial

supervision, coupled with the mandatory drug testing condition,

coupled with travel restrictions, all of those things together

are really all the tools we have at our disposal and they're

appropriate here but put all together, your Honor, I believe

that they meet the standard set forth by 3142.  Mr. Scurlock

would wear that bracelet at his family home, it was a home

owned by his foster parents and now it's in the name of his

brothers, he has lived there for 20-some-odd years.  And, it is

L8G5scuA

1     here in the Southern District of New York and that is a place

2     where, of course, Pretrial Services could monitor him.

3          So, for all of those reasons -- and of course I am

4     happy to answer any questions the Court has -- but given the

5     presumption of release and the robust package we have put

6     forth, we think that release is appropriate under 18 U.S.C.

7     3142.

8          THE COURT:  Ms. Chong?

9          MS. CHONG:  Your Honor, first, as to the charging

10    timeline, of course the federal government can't speak to the

11    NYPD's time line for referring cases to our office, but I can

12    assure the Court that when we received that referral earlier

13    this year, in 2021, we worked with all due speed to thoroughly

14    and timely investigate the case.  In any event, nothing about

15    the timeline undermines the defendant's dangerous as reflected

16    in the facts in the alleged complaint which I think do speak

17    because for themselves.  Because of those facts, the government

18    agrees with pretrial services assessment that no condition or

19    combination of conditions will reasonably assure the safety of

20    the community or, in this case, the defendant's appearance.

21          First, the nature and circumstances of the offense

22    make clear the danger the defendant poses.  The defendant here

23    did not merely unlawfully possess a loaded firearm, which is

24    itself a serious crime.  As alleged in the complaint, the

25    defendant actually shot someone on a public street populated by

L8G5scuA

people who were gathered there for July 4th.  As described in

the complaint, the evidence is extensive.  The government

proffers that in addition to the firearm itself -- and

questions and disputes about the DNA match aside -- the

government has surveillance and cell phone footage of the

shooting.  There you can see the shooter is wearing distinctive

red, blue and white clothing that matches clothing worn by

defendant in photographs of the defendant from a phone which we

believe the defendant left behind on the scene and was

recovered from a witness who indicated he was on the scene.

Also on that phone, as indicated earlier in this proceeding,

are photographs that match the firearm in this case, a black

Phoenix Arms pistol.

          As reflected in the Pretrial Services report, the

defendant does have a criminal history that the government

believes suggests he poses a danger.  It reflects convictions

for grand larceny and attempted robbery.

          The government would also like to emphasize that the

preponderance of the evidence also supports the defendant's

future non-appearance.  The defendant has actively evaded law

enforcement since the arrest warrant was issued in May.  Based

on my conversations with NYPD, it appears that when law

enforcement went to the address on file for the defendant, an

individual who identified himself as Mr. Scurlock's brother and

house mate, provided the detective Mr. Scurlock's phone number

L8G5scuA

1    and also called Mr. Scurlock right there on the scene.  A

2    detective then actually spoke to Mr. Scurlock and indicated

3    that an arrest warrant had been issued and Mr. Scurlock

4    responded that he would not be turning himself in.  He was

5    eventually tracked to a suspected drug house in Maine and

6    arrested.

7          I note that Mr. Scurlock is also currently facing a

8    drug trafficking charge in Maine state court and had an

9    in-person court appearance scheduled for July 1st.  I spoke

10   with the Maine AG's office today and they confirmed

11   Mr. Scurlock did not appear.

12         In light of the danger the defendant poses and his

13   very likely non-appearance, the government respectfully

14   requests that he be detained.

15         THE COURT:  I have read the pretrial services report

16   but let me just check also with Officer Piperato.  Is there

17   anything further you wish to add?

18         OFFICER PIPERATO:  No.  Pretrial services, our

19   position remains the same as listed in the initial bail report.

20         THE COURT:  So, let me start, unless there is anything

21   further, Ms. Levine, you wish to add.

22         MS. LEVINE:  No, your Honor.  I think for the most

23   part would I rest on the record I previously made.  I think

24   some of the facts posed by the government at the end are things

25   not reflected in the Pretrial Services report.  There does not

L8G5scuA

appear to be an active warrant according to the record I am

looking at, for example, and, you know, this is all to say many

of these things, many of these questions will be answered.

There will come a time when Mr. Scurlock and I will either be

presenting facts to a jury or admitting guilt, as happens in

every case but, again, that does not foreclose the issue we are

here discussing which is whether or not conditions can be set

in the meantime.

THE COURT:  Ms. Chong, can you say anything more about

the DNA match?

MS. CHONG:  Your Honor, I can say that we have a

complete file from OCME and that I agree with defense counsel

that questions of whether it constitutes a match will be

litigated later, but I will say that we have a report that

indicates, I believe it is a 98 percent likelihood.  But I

would have to go back and check my facts on that but our

indication is that that constitutes a DNA hit.

THE COURT:  Let me start with the relevant standards

under the Bail Reform Act.  In determining whether a defendant

should be detained pending trial, the question is whether there

is a condition or combination of conditions that would

reasonably assure the appearance of the person as required and

the safety of any other person in the community.

I have considered the factors under 18, U.S. Code

3142(g).  Those are the nature and circumstances of the charged

L8G5scuA

1    offense, the weight of the evidence against the defendant, the

2    history and the characteristics of the defendant, and the

3    nature and seriousness of the danger to any person or the

4    community that would be posed by the defendant's release.  Also

5    has been mentioned a review of the Pretrial Services report

6    which was prepared after Pretrial Services interviewed

7    Mr. Scurlock on August 12th, 2021.

8           I will deny Mr. Scurlock's bail application.  If facts

9    change such as appropriate to make a renewed application,

10   Ms. Levine of course is welcome to do so.  It goes without

11   saying that Mr. Scurlock is presumed innocent and he remains so

12   until and if proven guilty but it is relevant for me to

13   consider the nature and circumstances of the charged offense

14   and here that weighs strongly in favor of the detention on

15   danger to the community grounds.

16          Mr. Scurlock is charged with possessing a firearm

17   after a prior felony conviction and the complaint alleges

18   circumstances that he arrived to that possession including, on

19   July 4th, 2019, Mr. Scurlock allegedly approaching a physical

20   altercation between two men in the Bronx, the third man was

21   allegedly watching that fight and Mr. Scurlock is alleged to

22   have approached that person and shot him with a firearm.  After

23   that shooting there allegedly was a physical fight before

24   Mr. Scurlock and the other individual fled.

25          The weight of the evidence and, of course, both as we

L8G5scuA

will learn more about the evidence during discovery but the
weight of the evidence as proffered by the government also
appears to be strong.  This consideration largely goes to risk
of flight but also tends to underscore the seriousness of the
offense.  A firearm, specifically .25 caliber semi-automatic
Phoenix Arms pistol, was recovered from the scene along with
shell casings.  Of course, from the firearm, DNA was recovered
from the firearm and, at least to some degree, there appears to
be a match with the defendant.  Obviously the strength of that
match will be further developed as the parties review the
discovery and if there is any litigation on that issue.

Also, there is surveillance footage from the night of
the incident that the government represents shows the shooter
wearing a particular outfit, a blue hat with a red brim and
blue shorts with a red stripe that also later matched photos
recovered from the cellular phone that the government maintains
belonged to Mr. Scurlock.  That phone also contained several
photos of the firearms that I mentioned.

I also note as to the history and characteristics of
the defendant that he has a troubling criminal history.  While
the last conviction was almost a decade ago, felony convictions
were, again, troubling.  On January 17, 2008, he pled guilty to
attempted robbery in the second degree, and then in April 2011
he pled guilty to grand larceny in the fourth degree.

In light of all these factors, I find that the

L8G5scuA

1    government has met its burden and that there are no conditions

2    or combination of conditions of release that would reasonably

3    assure the safety of the community.  But again, as I mentioned,

4    if further things develop and there is a future bail

5    application, that should come to me.

6            Ms. Chong, is there further application from the

7    government?

8            MS. CHONG:  Yes, your Honor.  We seek exclusion of

9    time under the Speedy Trial Act from today until the date of

10   the next status conference.  I believe you set that for

11   September 13th.  The exclusion is in the interest of justice as

12   it will allow for production of discovery to the defense, for

13   defense counsel to review the discovery, and for the government

14   and defense counsel to confirm about possible resolution.

15           THE COURT:  Ms. Levine, have you had a chance to

16   discuss the Speedy trial Act with your client?

17           MS. LEVINE:  No, your Honor.  If I can have one

18   moment?

19           THE COURT:  You may.

20           (Defendant and counsel conferring)

21           MS. LEVINE:  Your Honor, we have no objection.

22           THE COURT:  Let me also ask, Ms. Levine, if I were to

23   exclude time through September 17th, which is a Friday of that

24   week since we don't know what day our next conference will be,

25   does the defendant have any objection to that?

L8G5scuA

1           MS. LEVINE:  No.  That's fine.

2           THE COURT:  I will therefore exclude time from today

3    until September 17th, 2021, pursuant to Title 18, United States

4    Code, Section 3161(h)(7)(A).  I find that the ends of justice

5    served by excluding such time outweigh the interests of the

6    public and defendant in a speedy trial and those are for the

7    reasons that Ms. Chong mentioned including to allow the

8    government to produce discovery to the defendant and for the

9    defendant and his attorney to do discovery and consider any

10   possible pretrial motions.

11          Are there any other matters that we need to address

12   this afternoon, Ms. Chong?

13          MS. CHONG:  Nothing from the government, your Honor.

14          THE COURT:  Ms. Levine?

15          MS. LEVINE:  No.  Not at this time, thank you.

16          THE COURT:  The conference is adjourned.  I will see

17   the party again the week of September 13th.  I wish you all a

18   good rest of the day.

19                              oOo

20

21

22

23

24

25