UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA

-against-

Ralph Scurlock,

Defendant
---------------------------------------------------X

SENTENCING SUPPLEMENT BRIEF

21 CR 489 (JPC)

**SUPPLEMENTAL BRIEF CONCERNING SENTENCING ON BEHALF OF DEFENDANT**

RESPECTFULLY SUBMITTED,

________/S/________________

Cohen Forman Barone, LLP
BY: David Jason Cohen
950 Third Avenue, 11th Floor
New York, NY 10022
david@cfblaw.com
212-766-9111

## INTRODUCTION

The defendant, Ralph Scurlock, through his newly appointed counsel, submits the instant, supplemental brief, addressing the proper Guidelines calculation that the Court should adopt in fixing a just, individualized sentence for the defendant at his sentencing hearing. Specifically, the instant brief addresses the question raised by the Court and then put to the parties at the most recent (non-completed) sentencing hearing: **whether Mr. Scurlock's previous New York State conviction of attempted robbery in the second degree under P.L. §§ 110/160.10 qualifies as a prior "crime of violence" under the applicable guideline sections[1] to this offense and this defendant's sentencing, in light of *United States v. Taylor*, 142 S. Ct. 2015 (2022)?** As the Court pointed out in framing that question, the answer determines whether Mr. Scurlock's offense level under the Guidelines should be calculated initially at 14 under USSG § 2K2.1(a)(6) or 20 under § 2K2.1(a)(4)(a). As the Court correctly discerned in raising this issue at the prior sentencing hearing, despite it not having been flagged by the parties or the probation department, the New York conviction of attempted robbery in the second degree most certainly does not qualify as a crime of violence under controlling law.

The instant brief does not address the question of whether Mr. Scurlock's New York state conviction of criminal sale of a controlled substance under P.L. § 220.39(1) qualifies as a "controlled substance offense" under U.S.S.G. §§ 2K2.1 and 4B1.2(b), as the issue had been fully addressed by the government and Mr. Scurlock's prior counsel in their sentencing submissions. The parties and the Court had already recognized the issue to be controlled by the Court's own ruling in *U.S. v. Gutierrez-Campos*, No. 21 CR. 40 (JPC), 2022 WL 281582 (S.D.N.Y. Jan. 31, 2022) (currently on appeal before the Second Circuit) and the Court has stated its intention to

[1] USSG § 2K2.1, Application Note 1, "Crime of Violence" has the meaning given that term under § 4B1.2(a) and the accompanying commentary.

follow that decision unless the Court of Appeals should issue an order reversing that opinion prior to Mr. Scurlock's sentencing. See, *Transcript, March 15, 2023, page 10 (colloquy).*

The defense also does not have any basis to request that the Court reconsider its finding at the prior hearing that Mr. Scurlock's youthful offender adjudication for criminal sale of a controlled substance in the third degree, under New York law, does count towards his criminal history score as the issue is indeed controlled by current Second Circuit precedent including the summary order cited by the Court, *U.S. v. Lesane*, 579 Fed. Appx. 51 (2d. Cir. 2014) as well as *U.S. v. Cuello*, 357 F.3d 162, 167 (2d Cir. 2004); see also, *U.S. v. Parnell* 524 F.3d 166, 170 (2d Cir. 2008; *U.S. v. Jones*, 415 F.3d 256, 263-64 (2d Cir. 2005).

MR. SCURLOCK'S PRIOR CONVICTION OF ATTEMPTED ROBBERY IN THE SECOND DEGREE IN NEW YORK DOES NOT QUALIFY AS A CRIME OF VIOLENCE UNDER U.S.S.G §§ 2K2.1, 4B1.2

In *United States v. Taylor*, 142 S. Ct. 2015 (2022), the Supreme Court ruled that attempted Hobbs Act robbery does not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The Court explained its holding by way of a hypothetical scenario:

> "Adam tells a friend that he is planning to rob a particular store [and] . . . drafts a note – "Your money or your life" – that he plans to pass to the cashier. The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response. When the day finally comes and Adam crosses the threshold into the store, the police immediately arrest him. It turns out Adam's friend tipped them off. There is little question the government could win a lawful conviction against Adam for attempted Hobbs Act robbery. After all, he intended to take property against the cashier's will by threat of force, and his actions constituted a substantial step toward that goal. At the same time, this example helps show why attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause. Adam did not "use" physical force. He did not "attempt" to use such force— his note was a bluff and never delivered. And he never even got to the point of threatening the use of force against anyone or anything. He may have

> intended and attempted to do just that, but he failed. Simply put, no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force."

*Taylor*, 142 S. Ct. at 2021.

The same reasoning applies to attempted New York robbery upon which Hobbes Act Robbery was entirely modeled[2]. A "person is guilty of an attempt" under New York law "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00. The intent to rob is just a mental state entailing no "use, attempted use, or threatened use of physical force." And, though the "conduct which tends to effect the commission of" a robbery "must 'carry the project forward within dangerous proximity to the criminal end,'" *People v. Bracey*, 41 N.Y.2d 296, 300 (1977) (citation omitted), "New York's 'dangerous proximity' requirement is virtually identical to the federal requirement that a defendant must take a 'substantial step.'" *United States v. Celaj*, 649 F.3d 162, 170 (2d Cir. 2011). Indeed, "the distinction between the federal and state requirements is 'more semantic than real." *Id*. at 170-71 (citation omitted). Regardless, New York's highest court has made it quite clear that attempted robbery can be committed without the "use, attempted use, or threatened use of physical force."

In *People v. Lamont*, 25 N.Y.3d 315 (2015), "at approximately 6:30 A.M., before the morning business hours, defendant and an accomplice appeared armed and masked at the rear door

[2] Importantly, "(r)obbery' under the Hobbs Act is . . . robbery as defined by the New York Penal Laws and construed by the courts of that State." *United States v. Nedley*, 255 F.2d 350, 357 (3d Cir. 1958). See also, *United States v. Aguon*, 851 F.2d 1158, 1164 (9th Cir. 1988) (*en banc*) ("Congressman Hobbs said explicitly that the definitions of robbery and extortion were modeled on the New York Penal Code."), overruled on other grounds by *Evans v. United States*, 504 U.S. 255 (1992); *Nat'l Org. for Women, Inc. v. Scheidler*, 396 F.3d 807, 813 (7th Cir. 2005) ("Congress used the Penal Code of New York as a model for the Act."); *United States v. Capati*, 980 F. Supp. 1114, 1125 (S.D. Cal. 1997) ("The legislative history of the Hobbs Act indicates that Congress took its definition of robbery from the New York statute. Congress manifested no intention to alter that definition substantially. Thus, a presumption exists that Congress intended to incorporate New York's interpretation of its robbery statute."), aff'd, 162 F.3d 1170 (9th Cir. 1998); *Dooley v. Crab Boat Owners Ass'n*, 271 F. Supp. 2d 1207, 1213 (N.D. Cal. 2003) (noting "the legislative history of the Hobbs Act and its origins in New York penal law").

of a Wendy's fast-food establishment. The two lone employees who were preparing to open heard loud knocking, and one of them checked the security camera and saw defendant and his accomplice outside the back, knocking on the door. The employee did not let the two men in, but instead called his supervisor and 911." *Id*. at 317. Police arrested Lamont outside the Wendy's and recovered what had "appeared" on the security camera to be "handgun[s]"— they were only "BB guns." *Id*. at 317. The state's Court of Appeals affirmed his conviction for attempted robbery, rejecting his claim that he could have intended to commit murder instead of robbery: the "BB gun supports an inference of intent to forcibly steal rather than an intent to commit murder." *Id*. at 321. His plan was to use the BB gun to scare the employees into handing over money. It didn't matter that he never got that chance to trick them: he "showed up masked and armed, carrying a backpack, seeking entry at 6:30 A.M. through a locked rear door not used by the public, with an escape vehicle conveniently parked nearby. This fit the pattern common to an early morning robbery." *Id*. at 322.

As with "Adam" in *Taylor*, the defendant in *Lamont* "did not 'use' physical force. He did not 'attempt' to use such force— his plan [to point a BB gun] was a bluff and never [realized]. And he never even got to the point of threatening the use of force against anyone." See, *Taylor, infra* at 142 S. Ct. at 2021. He was guilty of attempted robbery all the same. Thus, just as the Supreme Court determined in *Taylor* regarding attempted Hobbs Act robbery, the materially identical offense of attempted New York robbery does not require any "use, attempted use, or threatened use of physical force." While the record remains less than definitive as to which subsection of N.Y.P.L. 160.10 Mr. Scurlock pled guilty in attempting to commit second-degree robbery[3], under the application of the categorical approach in looking at the minimum conduct

[3] See description of conduct set forth at PSR ¶ 32 and the attached Bronx County Court Certificate of Disposition at Exh. A, both of which fail to site a subsection of P.L. §§ 110/160.10.

necessary to commit the offense[4], Mr. Scurlock, like "Adam" in the Supreme Court's example in *Taylor*, or the Defendant in *People v. Lamont*, *supra*, could have been guilty of the offense by attempting to rob through a bluff.

Mr. Scurlock acknowledges that the Second Circuit has previously found that his conviction, attempted second degree robbery is a crime of violence under the "force" clause of U.S.S.G. § 2L1.2 *United States v. Pereira-Gomez*, 903 F.3d 155 (2d Cir. 2018). However, that Court's decision to deny the defendant's argument that attempted robbery could be committed without the use, attempted use or threatened use of physical force, rested upon its brisk reference to the defendant misunderstanding that attempt under New York law requires that action by an accused be taken so near to accomplishment that it is reasonable to conclude the crime would have been committed but for timely interference. See, *Pereira-Gomez*, 903 F.3d at 166.

Respectfully, it is Mr. Scurlock's position that the Circuit's decision of 2018 in *Pereira-Gomez* has been "overruled, implicitly…by the Supreme Court ('s decision in Taylor)" *United States v. Davis*, 726 F.3d 357, 368 (2d Cir. 2013) (citation omitted). To secure a conviction for attempted New York robbery, the prosecution need not "prove the use, attempted use, or threatened use of force." *Taylor*, 142 S. Ct. at 2025. And, "(T)hat ends the inquiry." *Id*. Moreover, even the Second Circuit itself, in a decision authored shortly before the Supreme Court issued *Taylor* last year, declined to extend *Pereira-Gomez'* reasoning in determining that New York attempted gang assault does not constitute a "crime of violence" under U.S.S.G. § 4B1.2- the precise Guideline definition that applies to Mr. Scurlock. *U.S. v. Castillo*, 36 F.4th 431 (2d Cir. 2022). In *Castillo*, in reasoning that foreshadowed the Supreme Court's decision in *Taylor* that would soon follow, the Court noted its decision in *Pereira-Gomez* but also acknowledged that it had created no rule that

[4] *Descamps v. U.S.* 570 U.S. 254 (2013); *U.S. v. Castillo,* 36 F.4th 431 (2d Cir. 2022).

a statute requiring the intended presence of co-perpetrators amounted to a threatened or attempted use of force. Rather, seeing the second-degree robbery and gang assault statutes as elementally akin, the Court held that the intended presence and aid of two or more persons does not, categorically, involve the use, attempted use, or threatened use of physical force. *Castillo*, 36 F.4th at 440. District Courts had also distinguished *Pereira-Gomez* on at least two other occasions prior to *Taylor*, including, openly questioning whether attempted robbery in New York indeed constituted a crime of violence. See, *U.S. v. Halliday*, 511 F.Supp.3d 205, 212 (D. Conn. 2021) (noting the reasoning of the Fourth Circuit in *Taylor*, that an attempt to threaten the use of force is not the use of force, attempted use of force or threatened use of force); see also, *U.S. v. Cuthbert*, 453 F.Supp.3d 595, 600 (E.D.N.Y. 2020).

One anticipated argument from the government, as indicated above, may be that attempt under New York law is more strictly construed and thus a defendant must, categorically, proceed further toward the commission of the completed crime under New York law, whereas federal law is applied to defendants more broadly and requires but a "substantial step" toward the completion of the crime intended. See generally, *U.S. v. Thrower*, 914 F.3d 770 (2d Cir. 2019) (describing New York's law for attempt to be a "more stringent" standard than under federal law); see also, *U.S. v. Halliday*, *supra*, 511 F.Supp.3d at 212 (citing *Thrower*); see also, *People v. Acosta*, 80 N.Y.2d 665, 670 (1993); *People v. Mahboubian*, 74 N.Y.2d 174, 196 (1989).

While the jurisprudence does establish a somewhat stricter standard in New York than in federal case law for attempt, the distinction is not one that has substantive relevance in the context of *Taylor*'s reasoning about an attempted robbery and the minimum conduct required to satisfy the statute. As *Taylor* points out, one can attempt to commit a robbery that would have been accomplished by a bluff and, therefore, even a step that is in "dangerous proximity" to the

commission of the bluff does not categorically (necessarily) entail the use of force, attempted use of force or threatened use of force in order for a New York criminal defendant to take such a step, thus making them guilty of attempted robbery at the state level. The Court of Appeals' affirmance of the defendant's attempted robbery conviction in *Lamont, supra*, confirms that and also should satisfy the Court that the "realistic probability test"[5] is also clearly satisfied. Moreover, the very example provided by the Supreme Court (and quoted at length above) in *Taylor* itself- of a defendant planning to commit a bank robbery via a bluff being arrested immediately upon crossing the threshold of the bank- most certainly would have satisfied the "dangerous proximity" New York standard for attempt as well as the less stringent "substantial step" standard for attempt under federal law. And, the same holds true under a categorical analysis of Mr. Scurlock's conviction, as his New York attempted second-degree robbery conviction could have been obtained through an attempt to commit a robbery through a bluff with or without him intending to be aided by or intending to aid others in doing so[6].

THE GUIDELINE'S COMMENTARY, WHICH PATENTLY CONFLICTS WITH § 4B1.2(A)(1), DOES NOT CONTROL

"For purposes of this guideline," § 4B1.2's commentary says, a "crime of violence" includes "attempting to commit" a "crime of violence." App. Note 1. And *completed* New York robbery "is categorically a crime of violence under the force clause of U.S.S.G. § 4B1.2(a)(1)." *United*

[5] *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183 (2007).

[6] The reason why it simply does not matter which subsection of P.L. §§ 110/160.10 Mr. Scurlock was convicted under is because the manner of force involved, whether Scurlock intended to act in concert with others, or individually by causing injury or displaying what was or appeared to be a gun, is that in any of those cases the manner of force could have been intended to be a ruse or a bluff about the threat of actual intended force.

*States v. Moore*, 916 F.3d 231, 240 (2d Cir. 2019). Given this, the commentary deems *attempted* New York robbery a "crime of violence" as well.

Yet it's doing so is "'plainly . . . inconsistent' with § 4B1.2," which, as shown above, does not reach attempted New York robbery. *Stinson v. United States*, 508 U.S. 36, 47 (1993) (citation omitted). And where, as here, "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." *Id*. at 43. Put simply, because attempted New York robbery isn't "violent" under § 4B1.2, the commentary can't be used to reach the opposite result.

The rulings in *United States v. Tabb*, 949 F.3d 81 (2d Cir. 2020), and *United States v. Richardson*, 958 F.3d 151 (2d Cir. 2020), are not to the contrary. Those cases found no problem with § 4B1.2's commentary reaching drug conspiracies even though conspiracy isn't expressly listed as a "controlled substance offense" in the Guideline's text. "Section 4B1.2 defines 'controlled substance offense' as an offense under federal or state law 'that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance.' To 'prohibit' means, among other things, 'to prevent [or] hinder.'" *Richardson*, 958 F.3d at 154-55 (citations omitted). "A ban on attempting to distribute a controlled substance," like a ban on conspiring to sell one, "'hinders' the distribution of the controlled substance." *Id*. at 155 (citation omitted).

But in contrast to the "prohibit" language in the "controlled substance offense" provision at § 4B1.2(b), the "crime of violence" clause requires an offense to have "*as an element* the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1) (emphasis added). And as shown above, attempted New York robbery has no such *element*: all that's required is intent to rob and some "conduct which tends to effect the commission of" a robbery, N.Y. Penal Law § 110.00, which needn't involve any actual, attempted or threatened use

of force. *See Lamont*. In short, and unlike § 4B1.2(b), there is no language in § 4B1.2(a)(1) that licenses the commentary to reach crimes that do not have, "as an element," the use of force.

To paraphrase *Taylor*, if the Sentencing Commission "had wanted [§ 4B1.2(a)(1)] to do the kind of work the [commentary] supposes, it could have easily said so. For example, it might have swept in those federal crimes that require as an element 'the use or threatened use of force' *and* those 'that constitute an attempt to commit an offense that has such an element.' But that simply is not the law we have." 142 S. Ct. at 2022 (emphasis in original). As shown, the text of § 4B1.2(a)(1) does not reach attempted New York robbery. Consequently, the commentary cannot be used to reach that crime, as doing so would be "'plainly . . . inconsistent' with § 4B1.2." *Stinson*, 508 U.S. at 47 (citation omitted).

GUIDELINES CALCULATION

Having determined that Mr. Scurlock's conviction cannot qualify as a crime of violence under U.S.S.G. § 4B1.2 and thus § 2K2.1, the appropriate base offense level is 14 under §2K2.1(a)(6). To that base offense would then be added four (4) levels under U.S.S.G. § 2K2.1(b)(6)(B) resulting in an offense level of 18 as set forth in the plea agreement, the PSR and the parties prior sentencing submission. See, *ECF Nos. 53, 57*. Then, after subtracting three (3) levels based upon the defendant's early acceptance of responsibility and in pleading guilty to the instant offense[7], his final offense level is reduced to 15.

As noted above, the defense does not have any legal basis to dispute the application of three (3) criminal history points for his youthful offender adjudication, however, the defense would ask that the Court honor the agreement of the parties, expressed as recently by the government in

[7] U.S.S.G. §§ 3E1.1(a), (b).

its March 9, 2023 sentencing submission, wherein the government asked, essentially, that the Court not add those points to the defendant's criminal history in a way that would raise the floor of Guidelines range the parties had agreed to. See, *ECF No. 57 § II. B*. Accordingly, the defense would request that the Court find that the defendant remains at a criminal history score of V- corresponding to a Guidelines range of 37-46 months incarceration. In the alternative, should the Court determine to apply the additional three (3) criminal history points not anticipated by the parties, thus making Mr. Scurlock a level VI on his criminal history score, the corresponding Guidelines range is 41-51 months imprisonment.

## CONCLUSION

The defense respectfully submits that in light of the substantial individual equitable considerations presented in Mr. Scurlock's case and provided to the Court in the sentencing submission of his prior counsel with help of a mitigation specialist, the Court should impose a sentence of incarceration lower than either of the potentially applicable ranges of incarceration determined by the application of the Sentencing Guidelines. The fact that the Court is now required to find that neither the prior "controlled substance offense" or "crime of violence" offense characteristics applies should in no way alter any determination as to the appropriateness of the Court varying downward from any correctly computed Guideline range under current law. Simply put, the defense requests that the Court apply the same level of proportionate downward variance from the correctly computed Guidelines range as it would have from a higher Guideline's range had *Taylor, supra*, not been issued or had the Second Circuit issued a decision reversing the Court decision in *Gutierrez-Campos, supra*, prior to imposing Mr. Scurlock's sentence.

WHEREFORE, and based upon the foregoing, the defense respectfully requests that the Court impose a sentence of thirty (30) months incarceration which is sufficient, yet not greater than necessary to achieve the goals of sentencing under the parsimony provision of 18 U.S.C. § 3553(a).

Sincerely yours,

//s// David Jason Cohen//s//
Cohen Forman Barone, LLP
BY: David Jason Cohen
950 Third Avenue, 11th Floor
New York, NY 10022
david@cfblaw.com
212-766-9111

Cc: AUSA, Jane Chong (via ECF)
U.S District Attorney's Office
Southern District of New York
*Filed via ECF and Electronic Mail*